Henry C. FIELD, Jr., Appellant,

v.

Harold BROWN, Secretary of Defense, et al.

Henry C. FIELD, Jr., Appellant,

v.

Harold BROWN et al.

Joseph E. HOKER et al., Appellants,

v.

Harold BROWN.

James G. LITTLE, Appellant,

v.

W. Graham CLAYTOR, Jr., et al.

Nos. 76–1781, 78–1336, 78–1376 and 78–1716.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 17, 1979.

Decided Nov. 13, 1979.

Rehearing Denied Jan. 2, 1980.

Joseph K. Taussig, Jr., Washington, D. C., for appellants.

Gordon C. Rhea, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry and Michael J. Ryan, Asst. U. S. Attys., Washington, D. C., were on brief, for appellees.

George D. Webster and Michael Lenehan, Washington, D. C., were on brief, for amicus curiae urging reversal.

Also Richard A. Graham, Asst. U. S. Atty., Washington, D. C., entered an appearance, for appellee.

Before McGOWAN and MacKINNON, Circuit Judges, and OBERDORFER *, United States District Judge, United States District Court for the District of Columbia.

Opinion for the Court filed by District Judge OBERDORFER.

OBERDORFER, District Judge:

These consolidated appeals involve challenges by retired officers of the Navy to the constitutionality of two statutes that restrict their ability to make sales to the armed services. 18 U.S.C. § 281 (1976) forbids retired regular military personnel from "represent[ing] any person in the sale of anything to the Government through the department in whose service he holds a retired status" and provides a possible fine of $10,000 and a two-year term of imprison-

* Sitting by designation pursuant to 28 U.S.C. § 292(a).

ment.[1] 37 U.S.C. § 801(c) (1976) prohibits the distribution of retirement pay to retired regular officers who engage in "selling, or contracting or negotiating to sell, supplies or war materials" to the armed services and certain other governmental agencies within 3 years after the date of their retirement.[2]

Appellants also challenge the procedures adopted by the Department of Defense and by the Navy for monitoring compliance with 37 U.S.C. § 801(c). Specifically, they claim that Department of Defense (DOD) Directive 5500.7, which requires retired regular officers to submit a description of their employment to the Department,[3] and DD Form 1357, which is the "Statement of Employment" required by Directive 5500.7,[4] violate the constitutional privilege against self-incrimination and the Privacy Act, 5 U.S.C. § 552a (1976).

The District Courts hearing these cases below upheld the statutes and procedures in the face of appellants' wide ranging attacks. We affirm.

## I.

### A. *Field v. Brown*

Appellant Field, who retired from the Navy in August, 1968, began working in

---

1. 18 U.S.C. § 281 (1976) states, in part:

   [Any officer who] directly or indirectly receives or agrees to receive, any compensation for any services rendered or to be rendered, either by himself or another, in relation to any proceeding, contract, claim, controversy, charge, accusation, arrest, or other matter in which the United States is a party or directly or indirectly interested, before any department, agency, court martial, officer, or any civil, military or naval commission, shall be fined not more than $10,000 or imprisoned not more than two years, or both; and shall be incapable of holding any office of honor, trust, or profit under the United States.

   Retired officers of the armed forces of the United States, while not on active duty, shall not by reason of their status as such be subject to the provisions of this section. Nothing herein shall be construed to allow any retired officer to represent any person in the sale of anything to the Government through the department in whose service he holds a retired status.

   In 1962 this statute was partially repealed, remaining in force *only* for "retired officers of the Armed Forces of the [U.S.]" As a result, "retired officers" can deal with the Government in a private capacity except that they may not "represent any person in the sale of anything to the Government through the department in whose service he holds a retired status." *See* H.R.Rep.No. 748, 87th Cong., 1st Sess. 2 (1961); S.Rep.No. 2213, 87th Cong., 1st Sess. 12 (1962).

2. 37 U.S.C. § 801(c) (1976) states:

   Payment may not be made from any appropriation, for a period of three years after his name is placed on that list, to an officer on a retired list of the Regular Army, the Regular Navy, the Regular Air Force, the Regular Marine Corps, the Regular Coast Guard, the Environmental Science Services Administration, or the Public Health Service, who is engaged for himself or others in selling, or contracting or negotiating to sell, supplies or war materials to an agency of the Department of Defense, the Coast Guard, the Environmental Science Services Administration, or the Public Health Service.

3. DOD Directive 5500.7, entitled "Standards of Conduct," promulgates ethical standards for Department of Defense personnel "relating to possible conflict between private interests and official duties." The portion of the Directive challenged by appellants appears under the heading, "Retired Regular Officers," and states in part:

   a. Each regular retired officer of the armed forces shall file with the military department in which he holds a retired status a Statement of Employment (DD Form 1357). Each regular officer retiring hereafter shall file this Statement within thirty days after retirement. Whenever the information in the statement is no longer accurate, each such officer shall file a new DD Form 1357.

   b. The military departments shall appropriately review the Statements of Employment to assume compliance with applicable statutes and regulations.

4. DD Form 1357 was modified during the course of this litigation. The "old" form required a retiree to submit his employer's name and address, to indicate what goods and services, if any, his employer provided to the Defense Department or specified agencies, to describe his own position and duties, and to subscribe to the statement: "My duties do not involve selling to the Government in violation of the statutes and policies cited in the regulation received" [referring to 18 U.S.C. § 281].

   A "new" DD Form 1357 supplanted the old form as of January 1, 1977, and it is still in use. The new form added a Privacy Act disclosure and expressly provided that failure to file the form would not in itself trigger criminal sanctions.

December 1973 for Metro Machine Corporation, a company based in Norfolk, Virginia that is primarily engaged in repairing Navy ships. Field served as the "point of contact for contractual matters and inquiries by the Navy." In that capacity he received Navy job orders, responded to Navy inquiries regarding the performance of contracts, prepared price quotations and presented them to the negotiating agent for the Navy, and signed formal Navy bids, proposals, and job orders.

On September 11, 1974, at his employer's request, Field wrote to the Judge Advocate General of the Navy (JAGN) for advice concerning his compliance with 18 U.S.C. § 281, the statute that proscribes retired regular officers from representing persons in the sale of materials to the government under certain circumstances. The Judge Advocate General's Office responded on October 1 that Field's case was being turned over to other authorities "for investigation with a view to resolving the possible penal and civil liabilities, if any, which you may have incurred as a result of your employment." The letter also advised appellant Field that further communication with the JAGN office "presumably would not be in your best interests at this time."

On October 29, 1974 the Navy directly contacted Metro Machine by letter, advising it that Navy personnel would not be permitted to discuss sales matters with Field. Field's employer thereafter excused him from job assignments involving the Navy.

Two days later, on October 31, 1974, Field filed a complaint alleging that § 281 was fatally vague, constituted a bill of attainder, had been effectively repealed by other recent legislation, and unconstitutionally restricted his purported property right to earn a livelihood. He also maintained that Directive 5500.7 and DD Form 1357 violated

his privilege against self-incrimination under the Fifth Amendment and Article 31 of the Uniform Code of Military Justice, 10 U.S.C. § 831, by confronting him with the choice of filing the form and risking the use of its contents against him in a prosecution under 18 U.S.C. § 281, or not filing it and risking a court-martial under 10 U.S.C. § 892 for failing to comply with a military regulation. Field later moved to amend his complaint to include claims that § 281 is unconstitutionally discriminatory because it proscribes the activities of retired regular officers, but not those of retired reservists, and that DD Form 1357 violated the Privacy Act.

In an order dated April 7, 1976, the District Court granted appellees' motion to dismiss Field's allegations that 18 U.S.C. § 281 constituted an unconstitutional deprivation of the alleged right to freely choose and earn one's living. The Court at the same time rejected Field's argument that the statute unconstitutionally discriminates between regular and reserve officers and that the statute is impermissibly vague.[5] Later, however, the Court ruled in favor of appellant by finding that DD Form 1357 asked for information that would force Field to incriminate himself under 18 U.S.C. § 281. The Court accordingly enjoined the Navy from demanding Field's compliance with the form to the extent that it "requires [Field] to submit information concerning his private employment which may tend to incriminate him . . .." See Order of August 26, 1976.

Shortly thereafter, on September 9, 1976, Field requested the District Court to amend its August 26 Order to hold that DD Form 1357 violated the Privacy Act. The Government never responded to Field's motion and on November 12 the Court treated it as conceded.[6]

---

**5.** The District Court refused to permit appellant Field to amend his complaint to add discrimination and vagueness counts relating to 18 U.S.C. § 281. It did so on the authority of *Taussig v. McNamara*, 219 F.Supp. 757 (D.D.C.1963), *aff'd without opinion*, No. 18134 (D.C. Cir. April 6, 1964), *cert. denied*, 379 U.S. 834, 85 S.Ct. 65, 13 L.Ed.2d 41 (1964).

**6.** The District Court held an evidentiary hearing on June 2, 1977 to determine whether the Government should be required to pay costs for the Privacy Act violation that the Court had treated as conceded. On June 17, 1977, the Court ruled that Field had failed to show that appellees were "in willful or intentional disregard of the rights of [Field] (or anyone else)

On January 1, 1977, the Defense Department published a new DD Form 1357 providing for Privacy Act disclosure and an explanation of possible consequences of a failure to complete the form.[7] On September 28, 1977, Field moved the Court to require appellees to show cause why they should not be held in contempt. He contended that DOD Directive 5500.7 and the new DD Form 1357 continued to violate the Court's orders of August 26 and November 12, 1976. The District Court denied the motion explaining that it "fail[ed] to state any ground for the contempt order [Field] seeks." Field has appealed from this ruling, and from the District Court's April 7, 1976 Memorandum and Order, which dismissed his claims that § 281 unconstitutionally interfered with his purported right to earn a livelihood and discriminated between regulars and reserves.

### B. *Hoker v. Brown*

Appellant Hoker is a retired regular naval officer who filed a complaint on April 29, 1977 challenging DOD Directive 5500.7 and DD Form 1357 on self-incrimination and Privacy Act grounds. Ruling on cross-motions for summary judgment, the District Court held on January 18, 1978 that the disclosure on the "new" DD Form 1357[8] "remov[ed] the compulsory aspect of the old form found self-incriminatory in *Field*" and complied with the Privacy Act by soliciting only information "relevant to the subject matter of" 37 U.S.C. § 801(c) and 5 U.S.C. § 5532, and "necessary to the accomplishment of their purposes."

### C. *Little v. Claytor*

Appellant Little retired from the regular Navy in October 1973. Shortly thereafter, in December, 1973, he secured employment with Sperry Flight Systems, a company that sells aircraft equipment to private corporations and the military. He submitted a DD Form 1357 on October 1, 1975, followed by a more detailed version on October 22, in which he described himself as Sperry's Mid-Atlantic representative.

The Judge Advocate General's Office informed Little in a letter dated January 15, 1976 that it required more information to determine whether he was violating 18 U.S.C. § 281 or 37 U.S.C. § 801(c). The letter warned that although disclosure was voluntary, failure to comply with the request might lead to an investigation, and that in any event JAGN might submit the disclosures to other agencies for possible use in administrative, criminal, or civil proceedings.

Little answered by resubmitting a copy of the October 22 form. The JAGN in turn requested additional information, but Little did not respond.

Little resigned from Sperry Flight Systems on March 20, 1976. Later that year,

---

under the Privacy Act." The Court denied the application for damages and attorneys fees while observing that "the evidence of record clearly demonstrates that defendants and their agents made good faith attempts to comply with both the letter and the spirit of the Privacy Act at all times from its effective date to the present."

**7.** *See generally* note 4 *supra*. The "new" DD Form 1357 includes a section entitled: "Data Required by the Privacy Act." That section states, in pertinent part:

PRINCIPAL PURPOSES: Information is required from retired regular officers to enable Department of Defense personnel to determine whether such officers are engaged in activities prohibited by law or regulation, including those that could result in the loss of retired pay or a reduction in retired pay due to other Federal employment.

ROUTINE USES: The information supplied on this form is forwarded to the Military Department in which the individual holds a retired status and is appropriately reviewed to assure compliance with applicable statutes and regulations.

DISCLOSURE: Disclosure of the requested information is voluntary in the sense that no criminal penalties will follow from failure to file. However, the information requested by this form is required to enable the Department of Defense to implement 37 U.S.C. § 801(c) and 5 U.S.C. § 5532. If the information is not provided, further investigation will ensue which may lead to the withholding of retired pay and the referral of the matter to the Comptroller General of the United States or other Federal agencies.

**8.** *See* footnotes 4 and 7.

the Navy Investigation Service completed a study of Little's employment with Sperry and the Service concluded that Little had occupied a "sales position" and that his March resignation was prompted by his unsatisfactory job performance. On February 4, 1977, JAGN wrote to the Commander of the Navy Accounting and Finance Center expressing its opinion that Little "violated 37 U.S.C. § 801(c) throughout the period of his employment as a sales representative for Sperry Flight Systems," basing its conclusion in part on information from his DD Form 1357.

Little filed a complaint for declaratory and injunctive relief on March 2, 1977. He challenged 37 U.S.C. § 801(c) as unreasonably restricting his opportunities for earning a living, imposing an excessive forfeiture in violation of the Eighth Amendment, unlawfully discriminating between retired regular officers and retired reservists, constituting a bill of attainder and containing unconstitutionally vague language. He also alleged that the Defense Department's requirement that he submit a DD Form 1357 violated his Fifth Amendment privilege against self-incrimination and his rights under the Privacy Act.

Shortly after the filing of this complaint, the United States Attorney for the District of Columbia informed appellant's counsel that the Judge Advocate General of the Navy had reviewed appellant's DD Forms 1357 and determined that the information available did not justify the conclusion that appellant had violated 37 U.S.C. § 801(c), despite earlier indications to the contrary. This representation was followed a year later by an opinion by the Navy Comptroller that "there is insufficient evidence to support a finding that CDR Little was employed in violation of 37 U.S.C. § 801(c)."

The District Court dismissed Little's constitutional challenge to 37 U.S.C. § 801(c) on May 15, 1978, on the ground that his "alleged present injury [is] remote and speculative." The Court dismissed the self-incrimination and Privacy Act claims against the "new" DD Form 1357 under the authority of the ruling in the *Hoker* case.[9] As to whether the "old" DD Form 1357 violated the Privacy Act, the Court ruled that appellees "did not violate the Privacy Act in soliciting information under the old form and that the damage claim accordingly must fail."[10] The District Court did find, however, that the "old" form violated the privilege against self-incrimination and it enjoined appellees from using information from that form against appellant in civil or criminal proceedings. This appeal followed the District Court's denial of Little's motion for reconsideration.

## II.

### A. *Privacy Act*

■ Appellants Hoker and Little[11] reassert their claims that the "old" and "new" DD Forms 1357, issued pursuant to Department of Defense Directive 5500.7, violate the Privacy Act, 5 U.S.C. § 552a (1976). We are persuaded, however, that the Government's use of DD Form 1357 does not violate the provisions of the Privacy Act, and accordingly we affirm the District Court's dismissal of those claims.

The Privacy Act requires that each agency maintaining a system of records shall "maintain in its records only such information about an individual as is relevant and necessary to accomplish a purpose of the agency required to be accomplished by statute or by executive order of the President." 5 U.S.C. § 552a(e)(1) (1976). The Act di-

---

**9.** *See* text accompanying note 8, *supra*.

**10.** In reaching this decision, the District Court noted that the *Field* Court's ruling in favor of appellant on the Privacy Act claim was not a decision on the merits. The Court in that case treated Field's Privacy Act claim as conceded because of the Government's failure to respond to the motion. *See* note 7, *supra*, and accompanying text.

**11.** Appellant Field prevailed on his Privacy Act violation in the District Court when the Government failed to respond to his motion and the Court treated it as conceded. *See* note 7, *supra*, and accompanying text. The Court later refused, however, to enter a contempt order based on that judgment, and it also denied appellant Little's motion for costs.

rects agencies to "collect information to the greatest extent practicable directly from the subject individual when the information may result in adverse determinations about an individual's rights, benefits and privileges under Federal programs." 5 U.S.C. § 552a(e)(2) (1976). It also requires that when an agency solicits information from an individual, the agency must inform the individual of the authority for requesting the information, the purpose for which the information is intended to be used, the routine uses that might be made of the information, and the effect of not providing all or any part of the requested information. 5 U.S.C. § 552a(e)(3) (1976).[12]

The Department of the Navy's use of DD Forms 1357 satisfies the substantive requirements of the Privacy Act. When the Department used the old DD Form 1357,[13] the policy and practice of the defendant was to furnish a "Privacy Act Statement"[14] with each copy that was distributed.[15] This statement described the authority for requesting the information; the principal purpose for which the information was to be used ("to monitor compliance with laws providing civil or criminal sanctions for engaging in certain proscribed post-retirement employment activities"); the routine uses that might be made of the informa-

tion; and the consequences of nondisclosure ("[r]efusal to provide the information will result in inquiry into the individual's entitlement to receive retirement pay and notification to the Department of Justice for other appropriate action.") Thus, the Privacy Act Statement that accompanied the old DD Form 1357 contained all the elements required by 5 U.S.C. § 552a(e)(3). The new DD Form 1357[16] incorporated a modified version of the disclosures made in the former "Privacy Act Statement," making them part of the form itself. Thus, it too contained the elements required by § 552a(e)(3).

In addition to containing the required disclosure, both the old and new DD Forms 1357 satisfy § 552a(e)(1) by requiring only the minimum amount of information needed to evaluate compliance with 37 U.S.C. § 801(c) and 5 U.S.C. § 5532. Both forms are simple and direct; they ask retired regular officers whether and in what capacity their employer deals with the Defense Department and other government agencies and, if their employer does sell materials to the government, DD Form 1357 requests the retired regular officer to describe the duties he or she undertakes for the employer. Neither version of the DD Form 1357 solicits extraneous information; neither

---

12. 5 U.S.C. § 552a(e)(3) requires that each agency that maintains a system of records shall:

    (3) inform each individual whom it asks to supply information, on the form which it uses to collect the information or on a separate form that can be retained by the individual—
    \*   \*   \*   \*   \*   \*
    (D) the effects on him, if any, of not providing all or any part of the requested information.

13. The "old" form was used until January 1, 1977. *See* notes 4 and 8, *supra.*

14. The Privacy Act Statement read as follows:
DD FORM 1357 (STATEMENT OF EMPLOYMENT)—PRIVACY ACT STATEMENT
1. AUTHORITY: 44 U.S.C. Article 3301; 37 U.S.C. Article 801; DOD Dir.5500.7, SECNAVIST 5370.2F (sorter)
2. PRINCIPAL PURPOSE(S): Information is requested to be submitted by retired Regular Navy and Marine Corps officers to enable Department of the Navy officials to monitor compliance with laws providing civil or criminal

sanctions for engaging in certain proscribed post-retirement employment activities.
3. ROUTINE USES: Information provided in the form may be furnished to other naval and DoD components; the U.S. General Accounting Office; the Civil Service Commission; the Department of Justice; the Department of Treasury; and other Federal agencies as appropriate for review, investigation, administrative action, criminal prosecution, or civil litigation; and to Congress.
4. DISCLOSURE MANDATORY/VOLUNTARY, CONSEQUENCES OF REFUSAL TO DISCLOSE: Disclosure is mandatory. Refusal to provide the information will result in inquiry into the individual's entitlement to receive retirement pay and notification to the Department of Justice for other appropriate action.
4ND NAVFINCen 1800/24 (11–75)
           CA 77–0735

15. Distribution of the "Privacy Act Statement" began with the passage of the Act.

16. *See* note 8, *supra.*

contains wide-ranging, open-ended inquiries. The forms thus satisfy the letter and spirit of § 552a(e)(1) of the Privacy Act.

The Department of Defense's use of the DD Forms 1357 also comports with § 552a(e)(2)'s admonition that agencies shall collect information directly from individuals themselves to the greatest extent possible. By sending the DD Forms 1357 to the retired regular officers, the Department of Defense avoids solicitation of job information from the employers of retired officers or other third parties. The Department thus has adopted the preferred practice of direct contact, minimizing covert investigation and information gathering.

In sum, both the old [17] the new DD Form 1357 satisfy the requisites of the Privacy Act. The Court therefore denies appellants' requests for relief, including damages and attorney's fees,[18] insofar as they are grounded on purported violations of the Privacy Act.

### B. *Self-incrimination*

The lower Court in the *Field* case held that the "old" DD Form 1357 violated the Fifth Amendment's privilege against self-incrimination [19] because compliance with the form was "mandatory." [20] The Department of Defense subsequently revised the form ("new" DD Form 1357), effective January 1, 1977, in order to cure the self-incrimination defects of the old form.[21] Appellants Field, Hoker and Little all challenged the new form on Fifth Amendment grounds,[22] and the District Courts hearing their contentions all expressly or impliedly [23] found that the new Form 1357 passes muster under the Fifth Amendment. They ruled that the disclosure section of the Privacy Act statement contained on the face of the new DD Form 1357 removes the compulsory aspect of the old form that the *Field* Court had found self-incriminatory. That section states, in part:

> Disclosure of the requested information is voluntary in the sense that no criminal penalties will follow from failure to file . . . . If the information is not provided, further investigation will ensue which may lead to the withholding of retired pay and the referral of the matter to the Comptroller General of the United States or other Federal agencies.

We affirm. The solicitation of information from retired regular officers through the use of new DD Form 1357 satisfies Fifth Amendment concerns of self-incrimination. Retired officers are not compelled to complete the DD Form 1357. The new form expressly declares on its face that "no criminal penalties will follow from failure to file this form." Although an investigation for possible violations of the

---

**17.** The use of information garnered from the "old" DD Form 1357 has been enjoined because the form violates the privilege against self-incrimination. Thus, as a practical matter the appellees cannot take advantage of any Privacy Act abuses contained in the "old" DD Form 1357, should there have been any. The Court nonetheless independently has tested the old form's compliance with the Privacy Act in order to evaluate appellant's request for damages and attorneys' fees because of purported violations of the Act.

**18.** *See* 5 U.S.C. § 552a(g)(4).

**19.** The District Court in *Field* ruled that the "old" DD Form 1357 violated the privilege against self-incrimination, but it refused to find the defendant in contempt for its use of the "new" DD Form 1357.

**20.** The "old" DD Form 1357 has been discontinued, and appellees have been enjoined from using information garnered from it against appellants. Accordingly, complaints about the "old" form no longer have the "vitality and immediacy essential to jurisdiction," *Reiss v. Richardson*, 147 U.S.App.D.C. 219, 221, 455 F.2d 1287, 1289 (1971).

**21.** *See* note 16, *supra*. The "old" form confronted retired officers with the dilemma of submitting the form and facing the possible use of its contents against them in prosecutions under 18 U.S.C. § 281, or of not filing it and risking court martial under 10 U.S.C. § 892.

**22.** The Fifth Amendment to the United States Constitution states, in part, that no person "shall be compelled in any criminal case to be a witness against himself."

**23.** *See* "new" DD Form 1357, notes 4 and 7, *supra*.

conflict of interest statutes will normally result when the form is not filed, the Defense Department clearly has authority to undertake such an investigation in any event, whether the form has been submitted or not. Such an investigation may or may not develop evidence of criminal conduct. But if it does develop such information, it will do so independently of any admission compelled of the defendant. Nor is there any reason to believe that, if an investigation led to a prosecution, the prosecutor would attempt (or be permitted by a Court) to use in evidence the defendant's earlier refusal to complete DD Form 1357. DD Form 1357 thus merely gives retirees the option of voluntarily providing the information rather than forcing the Department to initiate routine investigations in all cases.

In summary, a failure to file the new Form 1357 does not automatically bring reprisal for the assertion of the privilege not to file. *Compare Garrity v. New Jersey,* 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967). At most, a retired officer will call attention to himself, and an investigation for possible wrongdoing may result, an investigation that the DOD could undertake in any event. The implied threat that failure to complete and file DD Form 1357 could lead to an investigation does not, by itself, violate a constitutional privilege against self-incrimination.

The appellees' use of the new DD Form 1357 also satisfies the Fifth Amendment because the retirees' reporting obligation is imposed upon all retired officers, a distinguished and honorable class manifestly not a " 'highly selective group inherently suspect of criminal activities.' " *California v. Byers,* 402 U.S. 424, 430, 91 S.Ct. 1535, 1539, 29 L.Ed.2d 9 (1971). Retired regular officers as a class are not inherently suspect and, like taxpayers filing their returns, most of them do not run the risk of incriminating themselves by submitting a DD

Form 1357. *Compare Leary v. United States,* 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969) (registration requirement for marijuana tax struck down); *Marchetti v. United States,* 390 U.S. 30, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968) (registration requirement for gamblers tax struck down); *Albertson v. Subversive Activities Control Board,* 382 U.S. 70, 86 S.Ct. 194, 15 L.Ed.2d 165 (1965) (registration requirement for Communist organization members struck down).

Thus, the new DD Form 1357 does not interfere with the privilege against self-incrimination. Retired officers have a bona-fide, voluntary choice whether to complete the form or not. The form is not directed at a small group of likely violators of the conflict of interest statutes, but it is instead applied even-handedly to all retired regular officers. Appellants' challenges to the new form accordingly must fail.[24]

## C. *37 U.S.C. § 801(c)*

Appellant Little attacks 37 U.S.C. § 801(c)[25] on grounds that it unreasonably restricts his opportunities for earning a living, imposes an excessive forfeiture in violation of the Eighth Amendment, unlawfully discriminates between retired regular officers and retired reservists, constitutes a bill of attainder, and is unconstitutionally vague. The District Court found these constitutional challenges nonjustifiable in light of the Department of the Navy's representation that it had investigated Little's activities fully and found no violation of § 801(c). We affirm.

The Supreme Court often has repeated the principle that plaintiffs are not entitled to invoke the judicial power to determine the constitutionality of a statute unless they can demonstrate that they have sustained, or are in immediate danger of sustaining, a direct injury as the result of enforcement of the statute. *See, e. g.,*

---

**24.** DD Form 1357 also serves a regulatory function quite apart from enforcement of conflict of interest statutes. The form provides information that enables authorities to reduce pension payments to retirees who are holding federal

employment, in accordance with the Dual Compensation Act, 5 U.S.C. § 5532 (1976).

**25.** *See* note 2, *supra.*

*Laird v. Tatum*, 408 U.S. 1, 13, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972), *Ex parte Levitt*, 302 U.S. 633, 634, 58 S.Ct. 1, 82 L.Ed. 493 (1937). Stated differently, a plaintiff must present "a claim of specific present objective harm or a threat of specific future harm." *Laird v. Tatum*, 408 U.S. at 14, 92 S.Ct. at 2326.

■ Underlying this principle is "a conception of the role of the judiciary in a government premised upon a separation of powers, a role which precludes interference by courts with legislative and executive functions which have not yet proceeded so far as to affect individual interests adversely." *Communist Party v. Subversive Activities Control Board*, 367 U.S. 1, 72, 81 S.Ct. 1357, 1397, 6 L.Ed.2d 625 (1961). Accordingly, the courts should never " ' . . . anticipate a question of constitutional law in advance of the necessity of deciding it.' " *Id.*

■ In applying these principles to the case before us, we find that appellant Little has failed to demonstrate that the enforcement of § 801(c) has caused or threatened direct injury to him or placed him in any immediate danger of sustaining such injury. The Judge Advocate General of the Navy reviewed his DD Forms 1357 and determined that the information available did not justify a conclusion that appellant had violated 37 U.S.C. § 801(c) during his employment with Sperry Flight Systems.[26] After further investigation, the Comptroller of the Navy also concluded that there is insufficient evidence to support a finding

that Little's employment with Sperry violated § 801(c). In light of these representations, appellant Little cannot claim that he is a target of the enforcement of § 801(c). At most, there remains a remote possibility of future liability under the statute.[27] "Merely potential impairment of constitutional rights under a statute does not of itself create a justiciable controversy in which the nature and extent of those rights may be litigated." *Communist Party v. Subversive Activities Control Board*, 367 U.S. at 71, 81 S.Ct. at 1397. Little's constitutional complaints accordingly are not appropriate for judicial consideration.[28]

In summary, we agree with the District Court's assessment that appellant Little's alleged present injury is ephemeral in nature and his prospect of future harm remote and speculative. We accordingly dismiss appellant's constitutional challenge to 37 U.S.C. § 801(c).

### D. *18 U.S.C. § 281*

Appellant Field mounts an attack on 18 U.S.C. § 281 that in many respects mirrors Little's challenges to 37 U.S.C. § 801(c).[29] For reasons similar to those which disposed of Little's § 801(c) case, we must dismiss appellant Field's complaints about § 281.

■ As indicated, plaintiffs who seek to challenge a statute must demonstrate that the statute's application has injured them, or that they are in immediate danger of injury from the statute's enforcement.

---

**26.** The JAGN initially suggested that Little might be in violation of § 801(c), but it reversed its position. Appellant has failed to demonstrate that the JAGN's initial position caused him any injury.

**27.** Section 801(c) only limits retirees' employment options for three years after retirement. Since Little retired from the Navy on October 1, 1973, he cannot contend that § 801(c) will be enforced prospectively against him. The statute conceivably could be enforced against Little for his previous employment with Sperry, but the Navy has announced that it will not take any such enforcement action.

**28.** In his challenge to the constitutionality of § 801(c), appellant alludes to the present and future injury that the statute purportedly causes to all retired regular officers. Absent a showing of appellant's "personal stake in the outcome of the controversy," however, he may not rely on alleged injury to his fellow officers to bootstrap his own constitutional attacks. *Laird v. Tatum, supra*, 408 U.S. at 13–14, n. 7, 92 S.Ct. 2318.

**29.** Little alleges that § 281 is fatally vague, constitutes a bill of attainder, has been effectively repealed, and unconstitutionally restricts him from earning a livelihood.

Without such a demonstration, courts cannot be certain that plaintiffs have the "personal stake" in a controversy that is the prerequisite of judicial intervention.

In the *Field* case, the Department of Justice has represented in a letter dated June 27, 1978 and signed by Acting Assistant Attorney General John C. Keeney, that it will not prosecute cases under 18 U.S.C. § 281 "due to the vagueness of the statute." Given this representation, appellant Field cannot demonstrate that he has been injured or is immediately threatened with injury, due to the enforcement of § 281. Like Little's generalized complaints about § 801(c), Field's challenges do not take on the immediacy required for judicial consideration. Field cannot complain about the enforcement of § 281 when the Justice Department has explicitly represented that it will not enforce the statute because of its vagueness.

Of course, if the Justice Department reverses its position regarding the enforcement of § 281, Field then may be able to demonstrate the "personal stake" and immediate danger of injury that now are lacking. In order to enable Field to renew his complaints against the statute should the occasion arise, the District Court should vacate its judgment regarding the viability of § 281 and dismiss the Field complaint without prejudice. *See United States v. Munsingwear*, 340 U.S. 36, 71 S.Ct. 104, 95 L.Ed. 36 (1950).

*So ordered.*